UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-00662-FDW-SCR

| | |
|---|---|
| DENISE BAUCOM, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| NOVANT HEALTH, INC., | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 24). This matter has been fully briefed, (Doc. Nos. 24, 26, 27, 28), and is ripe for ruling. For the reasons set forth below, Defendant's Motion is **DENIED IN PART** and **GRANTED IN PART**.

## I. BACKGROUND[1]

This lawsuit arises out of Denise Baucom's ("Plaintiff") employment as a Registered Nurse ("RN") in Novant Health's ("Defendant") Hospice Unit within Novant's Presbyterian Medical Center in Charlotte, North Carolina. The Hospice Unit provides end-of-life care to patients which includes turning, repositioning, administering medications, bathing, providing incontinence care, and tending to wounds. (Doc. No. 27-7, p. 1). Additionally, postmortem care is provided to include cleaning the patient, removing all medical equipment from the patient, placing the patient in a body bag, and transporting the patient to the morgue. (Id. at 2). Defendant's job description for the RN position includes occasionally lifting or carrying eleven (11) to thirty (30) pounds. (Doc. No. 24-4, p. 12).

---

[1] The background set forth herein is taken from a combination of the parties' briefing and attached exhibits. The background is taken in the light most favorable to Plaintiff as the nonmoving party.

1

The Hospice Unit previously was staffed with two RNs and one Certified Nursing Assistant ("CNA"), but at all relevant times for purposes of this lawsuit the Hospice Unit was only staffed with two RNs. (Id.). Therefore, the responsibilities typical of a CNA became the responsibility of the RNs working. (Id.). Of significance, Defendant's job description for a CNA includes frequently lifting or carrying eleven (11) to twenty (20) pounds and occasionally lifting or carrying twenty-one (21) to thirty (30) pounds. (Doc. No. 27-16, p. 4). All lifting, turning, or repositioning is conducted at waist level using nursing techniques taught to promote proper body mechanics and to ensure the safety of both the RN and the patient. (Doc. No. 27-7, p. 3; Doc. No. 27-13, p. 5).

Plaintiff began working for Defendant in April 2015, typically working the 7:00 p.m. to 7:00 a.m. shift. (Doc. No. 24-4). On March 9, 2020, Plaintiff had surgery on her rotator cuff and remained out of work until July 2020. (Doc. No. 24-2, p. 3). In anticipation of returning to work, Plaintiff's doctor provided documentation for Defendant as to the restrictions placed on Plaintiff which included: no lifting over two (2) pounds above shoulder level, ten (10) pounds from waist to shoulder, and twenty (20) pounds floor to waist. (Doc. No. 24-3, p. 2). These restrictions were initially set to last two months, with the doctor providing further guidance to Plaintiff after a follow-up. (Id.). After Defendant reviewed Plaintiff's restrictions, Defendant determined Plaintiff could be accommodated. (Doc. No. 24-1, p. 4). Namely, Defendant "confirmed that another [Hospice Unit] staff member could complete the task at hand rather than Plaintiff" and "Plaintiff could also call for assistance in the event another [Hospice Unit] staff member could not assist her in performing a duty she was unable to complete." (Id.).

On July 27, 2020, Plaintiff returned to work for the 7:00 p.m. to 7:00 a.m. shift working alongside fellow RN, Reba Shreve. (Doc. No. 27-7, p. 4). Ms. Shreve was not aware that

Plaintiff requested an accommodation nor that she was expected to provide additional assistance as needed. (Doc. No. 27-7, p. 3). Nevertheless, Ms. Shreve attempted to turn the patients alone without the help of Plaintiff but was unsuccessful. (Id.). Plaintiff and Ms. Shreve requested help multiple times over the course of their shift, yet no help was provided until approximately one hour before their shift ended. (Id.). The following day, Plaintiff contacted the Hartford Group—a third-party responsible for part of Defendant's accommodation process—and reported (1) the events that transpired during Plaintiff's shift, (2) the lack of accommodation in place, and (3) the need for accommodation. (Doc. No. 27, p. 3).

On July 30, 2020, Plaintiff again saw her doctor and received a referral directly to the Accommodations Department, which Plaintiff submitted to Employee Occupational Health. (Doc. No. 27-8). To be accommodated, Plaintiff either wanted a staff member assigned to come to the Hospice Unit to assist for rounds every two (2) hours or wanted to be assigned to a unit that did not involve lifting in violation of her medical restrictions. (Doc. No. 27-15, p. 3). Subsequently, due to concerns for her own safety and the safety of her patients, Plaintiff called out from each shift Defendant scheduled her to work. (Doc. No. 27, p. 4). Plaintiff communicated with her manager, Melissa Crank, that she had turned paperwork into the Accommodations Department, (Doc. No. 27-2, p. 2–3); however, Ms. Crank sent Plaintiff a letter on August 17, 2020, advising Plaintiff of the shifts for which she has called out and requesting information on whether Plaintiff intended to return to work. (Doc. No. 24-3, p. 3). Concurrently, the Hartford Group was investigating Plaintiff's disability claim and approved Plaintiff for long-term disability on August 19, 2020. (Doc. No. 27, p. 5). Plaintiff communicated her long-term disability status to Ms. Crank the same day. (Doc. No. 27-2, p. 5). Ultimately, Plaintiff's long-term disability continued through the time at which Plaintiff was terminated.

On November 25, 2020, Plaintiff timely filed a charge for disability discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 1–1). On January 20, 2021, Plaintiff received a letter from Ms. Crank informing her that Plaintiff was out on unapproved leave and would be terminated if she did not report to work on February 1, 2021. (Doc. No. 27-11, p. 2). On January 28, 2021, Plaintiff contacted Ms. Crank asking for clarification due to her approved leave status with the Hartford Group. (Doc. No. 27-5, p. 2). Plaintiff also communicated her interest in returning to work so long as her restrictions were accommodated. (Id.). On February 4, 2021, Plaintiff received another letter from Ms. Crank advising Plaintiff to disregard the January 20, 2021, letter due to "incorrect information." (Doc. No. 24-3, p. 4). Nevertheless, the February 4th letter informed Plaintiff that Defendant categorized Plaintiff's failure to return to work as "abandonment" and Plaintiff was being terminated. (Id.).

Plaintiff filed a first amendment to the Charge on March 2, 2021, to include the termination of her employment by Defendant, and a second amendment on October 4, 2021, to add an additional claim for discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* ("ADA"). (Doc. No. 1–1, p. 3–4). Plaintiff claims she filed a third amendment ("Third Amendment") to her Charge on January 27, 2022, alleging racial discrimination by Defendant for the first time. (Doc. No. 1–1, p. 5). The EEOC concluded its investigation and issued a determination recommending conciliation on May 24, 2022. (Doc. No. 1, p. 4). When conciliation failed, the EEOC issued a Conciliation Failure and Notice of Rights on September 14, 2022. (Doc. No. 1–1, p. 6).

Plaintiff filed this case in the United States District Court for the Western District of North Carolina on December 12, 2022, asserting claims against Defendant for: discrimination

4

under the ADA; failure to accommodate under the ADA; race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et. seq.* ("Title VII"); race discrimination under 42 U.S.C. § 1981 ("§ 1981"); and wrongful discharge due to race discrimination under the North Carolina Equal Employment Practices Act, N.C. GEN. STAT. § 143–422. (Doc. No. 1; Doc. No. 4). Defendant subsequently moved to Dismiss Plaintiff's Title VII and § 1981 claims for failure to state a claim, (Docs. Nos. 8, 9), which the Court granted. (Doc. No. 20). On August 28, 2023, Defendant filed the instant Motion for Summary Judgment. (Doc. No. 24). After reviewing the briefings by the parties and the exhibits submitted by the parties, the Court addresses Defendant's Motion for Summary Judgment herein.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324.

5

The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50. In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." Id. at 252.

### III. ANALYSIS

#### A. Americans with Disabilities Act

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges or employment." 42 U.S.C. § 12112(a). Here, Plaintiff asserts Defendant discriminated against her in violation of the ADA by terminating her employment due to her disability and Defendant failed to provide her with reasonable accommodations. The Court will

6

accordingly evaluate the merits of an ADA discrimination claim and ADA failure to accommodate claim in turn.

    1.    <u>Discrimination</u>

To survive summary judgment for an ADA discrimination claim, a plaintiff is required to "provide evidence sufficient to demonstrate that (1) [s]he 'was a qualified individual with a disability'; (2) [s]he was 'discharged'; (3) [s]he 'was fulfilling h[er] employer's legitimate expectations at the time of discharge'; and (4) 'the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination.'" <u>Reynolds v. Am. Nat. Red Cross</u>, 701 F.3d 143, 150 (4th Cir. 2012) (quoting <u>Rohan v. Networks Presentations, LLC</u>, 375 F.3d 266, 277 n.9 (4th Cir. 2004)). Once the *prima facie* case is established, Defendant has an opportunity to produce evidence of a legitimate, non-discriminatory reason for terminating Plaintiff. <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). The burden then shifts to Plaintiff to provide evidence that Defendant's non-discriminatory justification was merely pretext. <u>See</u> <u>id.</u> at 804.

Defendant argues there is no evidence to support that Plaintiff was meeting her employer's legitimate expectations at the time of discharge and there are no circumstances giving rise to an inference of discrimination. However, the Court disagrees. While Defendant correctly cites cases indicating that an employee is not meeting an employer's legitimate expectations when it is the employer's understanding that the employee is unwilling to return to work, <u>see</u> <u>Thomas v. City of Annapolis, Md.</u>, 851 F. App'x 341, 346 (4th Cir. 2021), the evidence before this Court raises a genuine dispute as to whether Plaintiff intended to return to work and what Defendant knew about that intent. Furthermore, the evidence indicates a dispute

7

as to the extent to which Plaintiff was on approved leave at the time of termination, and the extent to which Defendant knew of the approved leave.

Assuming Plaintiff can establish the elements for a prima facie case of ADA discrimination, the burden would shift to Defendant to provide evidence of a legitimate, non-discriminatory reason for Plaintiff's termination before shifting back to Plaintiff. Still, there is also a genuine dispute of material fact as to whether abandonment constitutes a legitimate, non-discriminatory justification for terminating Plaintiff under these circumstances or whether it is merely pretext. Resolution of these disputes would require the Court to resolve the credibility of witnesses and weigh the evidence, which is appropriate for a jury, not the Court. See Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) ("[C]ourts must . . . refrain from weighing the evidence or making credibility determinations. A court improperly weighs the evidence if it fails to credit evidence that contradicts its factual conclusions or fails to draw reasonable inferences in the light most favorable to the nonmoving party." (citations and quotations omitted)). Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's claim for ADA discrimination.

2. Failure to Accommodate

Another form of prohibited ADA discrimination is an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee." 42 U.S.C. § 12112(b)(5)(A). As defined by the ADA, "reasonable accommodations" can include "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, ... appropriate adjustment or modifications of ... policies, ... and other similar accommodations...."

Id. § 12111(9). To survive summary judgment for an ADA failure to accommodate claim, a plaintiff is required to show: (1) she was disabled; (2) the employer had notice of her disability; (3) she could perform the essential functions of her position with a reasonable accommodation; and (4) the employer refused to make such accommodation. Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013). Here, the parties dispute what constitutes an essential function of Plaintiff's RN position as well as whether Plaintiff is able to satisfy the third and fourth elements outlined above.

The beginning of this inquiry lies with a determination of what the essential functions of Plaintiff's RN position were. A function is essential as long as it "bears more than a marginal relationship to the job at issue." Rohan v. Network Presentations, LLC, 375 F.3d 266, 279 (4th Cir. 2004) (quoting Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994)). The ADA provides that, in any determination of a position's essential functions, "consideration shall be given to the employer's judgment." 42 U.S.C. § 12111(8). Though the ADA identifies a position's written job description as relevant to the employer's judgment, it does not posit that description as dispositive. Rather, in performing the essential functions inquiry, a court must "consult the full range of evidence bearing on the employer's judgment, including the testimony of senior officials and those familiar with the daily requirements of the job." Elledge v. Lowe's Home Centers, LLC, 979 F.3d 1004, 1009 (4th Cir. 2020).

Here, Defendant contends that "any lifting that would have violated Plaintiff's restrictions was not an essential function of her position . . . [or] was a marginal function of the position." (Doc. No. 24-1, p. 8). However, the parties' evidence reveals a genuine dispute as to material facts that preclude the entry of judgment for the failure to accommodate claim. For example, the evidence indicates a dispute as to the extent to which Plaintiff, as a RN, was also

responsible for the duties traditionally held by a CNA, which includes lifting in excess of Plaintiff's restrictions. Because this factual dispute must be resolved by a jury, the Court declines to address other disputes as to material facts for the remaining elements outlines above. Accordingly, Defendant's Motion is **DENIED** as to Plaintiff's claim for failure to accommodate.

**B.     Wrongful Discharge in Violation of North Carolina Public Policy (N.C. Gen. Stat. § 143-422.2)**

North Carolina's Equal Employment Practices Act ("NCEEPA") provides that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." N.C. GEN. STAT. § 143-422.2(a). When asserting a wrongful discharge claim in violation of public policy as set forth by the NCEEPA, a plaintiff bears the same evidentiary burden as required for a Title VII claim. See N.C. Dep't of Corr. v. Gibson, 301 S.E.2d 78, 84 (N.C. 1983) (adopting the "evidentiary standards and principles of law" of Title VII for discrimination claims asserted pursuant to the NCEEPA); Brown v. Martin Marietta Materials, Inc., 440 F. Supp. 3d 503, 519-20 (M.D.N.C. 2020) (holding that a wrongful discharge claim in violation of the NCEEPA rises and falls with an ADA claim); Hughes v. Bedsole, 48 F.3d. 1376 (4th Cir. 1995). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 28, 295 (4th Cir. 2004)).

Plaintiff has based her allegations completely upon a comparison to an employee from a non-protected class. (Doc. No. 24-2, p. 10–11). Therefore, the validity of her prima facie case

10

depends upon whether that comparator is in fact similarly situated. Tex. Dep't. of Comty. Affairs v. Burdine, 450 U.S. 248, 258 (1981). Accordingly, Plaintiff is required to show that she and the comparator are similar in all relevant respects including "evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Here, Plaintiff identifies S.C., a white female employed as a Registered Nurse in the Hospice Unit with Defendant, who was transferred to a different unit as a disability accommodation following surgery. While Plaintiff is correct that both she and S.C. are similar in many manners, aside from race, there is an important manner in which the two are different. Namely, the restrictions of each based on their respective disabilities vary significantly. Following Plaintiff's rotator cuff surgery, Plaintiff was prohibited from lifting over two (2) pounds above shoulder level, ten (10) pounds from waist to shoulder, and twenty (20) pounds from floor to waist. (Doc. No. 24-3, p. 2). Comparatively, S.C. was prohibited from doing "any pushing/pulling, bending, squatting, kneeling, gripping, twisting, or lifting over 25 pounds." (Doc. No. 24-4, p. 5–6). Therefore, under § 143-422.2, Plaintiff cannot establish a prima facie case with respect to S.C. because multiple differentiating and mitigating circumstances remain. Accordingly, Defendant's Motion is **GRANTED** as to Plaintiff's claim for wrongful discharge.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 24), is:

1. **DENIED IN PART**, to the extent it seeks summary judgment on Plaintiff's claim for ADA discrimination;

11

2. **DENIED IN PART**, to the extent it seeks summary judgment on Plaintiff's claim for ADA failure to accommodate;

3. **GRANTED IN PART**, to the extent it seeks summary judgment on Plaintiff's claim for wrongful discharge.

**IT IS FURTHER ORDERED** that the parties shall **TAKE NOTICE** that trial is scheduled to begin on Monday, January 8, 2024. (Doc. No. 15). The parties' Pretrial Submissions shall be due by December 18, 2023. Docket Call will take place at 9:01 a.m. on January 8, 2024, and the Final Pretrial Conference will take place immediately following Docket Call, in Courtroom #5B of the Charles R. Jonas Federal Building, located at 401 West Trade Street, Charlotte, North Carolina, 28202.

**IT IS SO ORDERED.**

_____
Frank D. Whitney
United States District Judge

Signed: December 12, 2023